FILED
SUPERIOR COURT
OF GUAM

2024 DEC 12 PM 5: 02

CLERK OF COURT

BY:_____

**IN THE SUPERIOR COURT OF GUAM**

| STEFFEN NIU, | CIVIL CASE NO. CV0188-24 |
|---|---|
| Plaintiff, | |
| vs. | **DECISION AND ORDER** |
| | *Re: Complaint for Partition and for Sale of Property* |
| DARLENE McNAMARA aka DARLENA Y. McNAMARA aka DARLENA YAOCH McNAMARA, | |
| Defendant. | |

This matter comes before the Honorable Arthur R. Barcinas on the filing of a Complaint for Partition and for Sale of Property by Plaintiff Steffen Niu ("Niu") on April 9, 2024. Niu is represented in this matter by Attorney Cynthia V. Ecube, and Defendant Darlene McNamara ("McNamara") is *pro se* at the time of this filing. Upon consideration of the Complaint, and there being no Answer, the Court will **GRANT** in part and **DENY** in part the Complaint.

**INTRODUCTION**

The parties' marriage was annulled on April 15, 2020. On May 6, 2021, the Superior Court of Guam granted Niu's Motion Enforcing the Foreign Decree of Annulment of a Void Marriage against McNamara in Domestic Case No. DM0409-19. Niu now seeks, among other things, partition and sale of a property held in joint tenancy by the parties; $64,587.99 in reimbursement from McNamara for Niu's payments toward the mortgage on said property held in joint tenancy by the parties, paid after the parties were separated; a buyout of McNamara's

respective interest in the above property; and a writ of ejectment of McNamara from the property.

## BACKGROUND

The parties were married on December 28, 2001 in Reno, Nevada. The parties physically separated on June 1, 2018, and Niu obtained a Decree of Annulment against McNamara in Nevada on April 15, 2020. On May 6, 2021, the Superior Court of Guam issued a decision enforcing the annulment decree in Guam. Niu alleges that "[s]ubsequent to [the parties] physically separating," the parties owned Lot Number 310-5 in Hagat as joint tenants with rights of survivorship pursuant to a warranty deed from the property's prior owners. Compl., at ¶ 7. The Court will assume Niu's counsel meant "prior to," rather than "subsequent to," as the Warranty Deed indicates that the property was conveyed to the parties on April 30, 2003, well before the separation. Compl., Ex. B. Niu further alleges that, pursuant to the annulment, the parties now each hold an undivided interest in the property.

At the time of the Complaint, the property was encumbered by a purchase money mortgage in the amount of $132,653.06, owed to the Bank of Hawaii. Niu alleges that, since the parties' physical separation, he has exclusively paid and continues to pay said mortgage, the total amount paid since the separation being approximately $64,587.99. Niu states that there is no great prejudice to the owners to permit a sale of the property.

Based on the above, Niu requests the Court to order the partition and sale of the property, according to the respective rights of the parties; allotment of respective shares upon sale; proportionate distribution of the costs of partition; reimbursement of the mortgage payments made by Niu since the parties' separation, to include all insurance and real property taxes, improvements, and property assessments paid by Niu, and any other amounts to be determined at trial; the buyout of McNamara's respective interest in the property by Niu from the remaining net proceeds; appointment of a referee to conduct and supervise the partition and sale of the property; a Writ of Ejectment ordering McNamara and all current occupants of the property to surrender possession of and vacate the property at the close of sale; and attorney's fees and costs.

On April 29, 2024, McNamara was served with the Summons and Complaint. McNamara asked for multiple extensions of time. On July 11, 2024, Niu filed for Entry of Default on the grounds that McNamara had failed to appear or to answer the Complaint. A hearing on judgment by default was held virtually on October 10, 2024. McNamara appeared, as did Niu's counsel.

At the hearing, Niu's counsel stated that the parties had reached an agreement on the following:

- that the property should be partitioned and sold;
- that there should be an allotment of each of their interests, each being one-half of the net proceeds of the sale of the property, as the mortgage contains both their names;
- that McNamara agrees to sell her interest in the property to Niu;
- that McNamara agrees to an appraisal of the property in order to assess its fair market value;
- that the mortgage payment paid by Niu, as well as insurance, property tax, improvements and assessments related to the property would be reimbursed to Niu;
- that the cost of suit and attorney's fees for bringing this partition; and
- that, upon the time of closing, McNamara will vacate the property.

The Court subsequently took the matter into consideration.

## DISCUSSION

According to the record, the parties jointly entered into the mortgage agreement, and acquired the property as joint tenants with rights of survivorship pursuant to a warranty deed from the prior owners of said property. Under Guam law, "[a] joint interest is one owned by several persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy." 21 GCA § 1215. Further,

> [w]hen several co-tenants own real property as joint tenants, or tenants in common, in which one or more of them have an estate of inheritance, or for life or lives or for years, or when real property is subject to a life estate with remainder over, an action may be brought by one or more of such persons ... for a partition thereof according to the respective rights of the persons interested therein,

and for a sale of such property, or a part thereof, if it appears that a partition cannot be made without great prejudice to the owners.

7 GCA § 24401. "Most States allowing joint tenancies ... [allow] severance to automatically accompany a conveyance of [one tenant's individual] interest or any other overt act indicating an intent to sever." *U.S. v. Craft*, 535 U.S. 274, 280 (2002). "Under the common law, joint tenants' right to alienate their individual shares is somewhat different from that of tenants in common, in that in order for one joint tenant to alienate his or her individual interest in the tenancy, the estate must first be severed, that is, converted to a tenancy in common with each tenant possessing an equal fractional share." *Id.* Because the parties never committed any overt act to sever the joint tenancy, apart from the proposed partition and sale, the Court finds that the joint tenancy is still in effect.

The annulment also did not sever the joint tenancy, as there was no dissolution of the marriage. "A judgment of dissolution of marriage is based on events that occur after inception of a valid marriage," but "[a] judgment of nullity of marriage determines that no valid marriage ever existed. *In re Marriage of Garcia*, 13 Cal.App.5th 1334, 1347. "[T]he legal reality is that a successful action for nullity of marriage results in a judicial determination that there never was a contract and hence there never was a marriage." *Id.*

Niu argues that McNamara owes the amount of mortgage payments that Niu had made since the parties' physical separation, but Niu does not state under which statute he is claiming the right to said payments. This is further complicated by the fact that the parties were effectively never actually married, and thus never actually separated. In an ordinary marriage and divorce, "[a]s a general rule, a spouse who, after separation of the parties, uses his or her separate funds to pay preexisting community obligations should be reimbursed upon divorce." *Babauta v. Babauta*, 2011 Guam 15 ¶ 32 (citing 19 GCA § 6101(a)). "Otherwise, parties would be discouraged from making payments on community obligations after separation for fear that they would receive no credit for such payments while the other spouse is awarded a windfall." *Id.* California law has held that, where a marriage is annulled, there can be no community property, but that "the court can treat the property as community if the marriage was entered into in good

faith by the party seeking relief." *In re Marriage of Liu*, 197 Cal.App.3d 143, 156 (1987). Niu has offered no evidence that the marriage was not entered into in good faith, and thus the Court will conduct its analysis as it would for community property in a divorce.

Under Guam law, in a valid marriage, a mortgage signed by both parties is considered a community debt when "it was incurred by both parties during the marriage and did not otherwise meet one of the five types of separate debt under 19 GCA § 6102(a)." *Babauta*, ¶ 39. In such a case, "[a]lthough title to [a] residence was taken in joint tenancy and therefore the separate property of the parties, the mortgage and other obligations on the residence were community obligations subject to satisfaction under 19 GCA § 6104 [governing the satisfaction of community debt]." *Id.* However, the party paying the mortgage "is only entitled to a reimbursement of one-half of the amount paid from his separate property, because one-half of the community debt was his obligation stemming from the marriage." *Id.* ¶ 34.

Accordingly, the Court finds that, to the extent that McNamara owes Niu for any payments made on the mortgage or costs thereof, Niu is only entitled by law to one-half of any amount claimed, as one half would be paid toward McNamara's obligation and one-half would be paid towards his own.

## CONCLUSION

Based on the foregoing, Niu's Complaint for Partition and Sale is **GRANTED** in part and **DENIED** in part, in that all relief sought has been stipulated to by McNamara but the Court will only allow Niu to be reimbursed for his payment of McNamara's obligation, equaling $32,294.00, as well as one-half of all costs related to the property, as established by law. Niu shall submit a Proposed Judgment consistent with the Court's ruling herein.

**IT IS SO ORDERED** DEC 1 2 2024 .

**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**